IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-703-D

| | | |
|---|---|---|
| JAMES GLENN and BRENDA GLENN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FNF SERVICING, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

On February 19, 2013, James and Brenda Glenn (collectively "Glenns") filed their amended complaint, asserting claims against multiple defendants [D.E. 30]. On March 5, 2013, defendant FNF Servicing, Inc. ("FNF") filed a motion to dismiss the amended complaint and a memorandum in support [D.E. 32–33]. See Fed. R. Civ. P. 12(b)(6). The Glenns responded in opposition to the motion to dismiss [D.E. 40]. On May 7, 2013, defendants United Lender Services Corp. and United Lender Services, LLC (collectively "United Lender") filed a motion for summary judgment [D.E. 41]. See Fed. R. Civ. P. 56. In response, the Glenns filed a motion for voluntary dismissal with prejudice of their claims against several defendants [D.E. 44]. See Fed. R. Civ. P. 41(a)(2). As explained below, the court grants in part and denies in part FNF's motion to dismiss, grants the Glenns' motion for voluntary dismissal with prejudice against several defendants, and dismisses as moot United Lender's motion for summary judgment.

I.

In April 1999, the Glenns purchased a home in Raeford, North Carolina. Am. Compl. ¶ 14; see Deed [D.E. 30-2]. To finance the purchase, the Glenns took out a mortgage, which currently is held by Bank of America. Am. Compl. ¶ 15; see [D.E. 30-3]. In 2009, the Glenns decided to

refinance their mortgage through Ideal Mortgage Bankers, Ltd., doing business as Lend America ("Lend America"). Am. Compl. ¶¶ 10, 16–17. On September 10, 2009, the Glenns signed the documents to complete the mortgage refinancing with Lend America. Id. ¶ 19. As part of the refinancing, Lend America was to pay off the balance of the Glenns' original mortgage with Bank of America. Id. ¶ 20; see [D.E. 30-4].

On October 2, 2009, the Glenns received a letter from Lend America informing them that the first payment on the refinanced mortgage was due on November 1, 2009. Am. Compl. ¶ 27; see [D.E. 30-9]. On October 27, 2009, the Glenns remitted a check for the payment amount, which Lend America deposited. Am. Compl. ¶ 28; see [D.E. 30-10]. In a notice dated November 2, 2009, Bank of America informed the Glenns that they were delinquent on their mortgage payments. Am. Compl. ¶ 29; see [D.E. 30-11]. The Glenns, who believed that Lend America had paid the balance of their Bank of America loan, investigated the issue in November and December 2009. Am. Compl. ¶ 31. The Glenns learned that Lend America was no longer in business and had not paid off the Bank of America loan. Id.[1] The Glenns made no further payments on the Lend America mortgage after the initial October 27, 2009 payment. Id. ¶ 32. On November 30, 2010, Lend America filed for bankruptcy. Id. ¶ 11.

In a letter dated December 24, 2009, FNF informed the Glenns that FNF had assumed responsibility for servicing the Lend America mortgage effective December 17, 2009. Id. ¶ 41; see [D.E. 30-16]. FNF acted on behalf of the Government National Mortgage Association ("Ginnie Mae"), which had acquired the Glenns' loan from Lend America. See Am. Compl. ¶ 13; Ginnie Mae Answer [D.E. 31] ¶¶ 9, 13. As mortgage servicer, FNF has undertaken collection efforts for

---

[1] In May 2010, Bank of America initiated foreclosure proceedings against the Glenns. See Am. Compl. ¶¶ 36–37. However, in August 2010, the Glenns paid the delinquent balance and avoided foreclosure. See id. ¶ 39.

payments the Glenns allegedly owe on what had been the Lend America mortgage. See Am. Compl. ¶ 43. Since January 2010, the Glenns have resisted FNF's collection efforts, contending that the underlying Lend America transaction was fraudulent because Lend America never paid off the Bank of America mortgage. See id. ¶ 42. The Glenns informed FNF and Ginnie Mae numerous times of their position. See id.

In a letter dated January 19, 2012, FNF notified the Glenns that the loan was in default. See id. ¶ 46; [D.E. 30-19]. The letter indicated that the Glenns immediately owed $27,831.72, and had a principal balance of $143,426.08. [D.E. 30-19] 1. On January 23, 2012, the Glenns wrote to FNF, as well as the credit reporting agencies Equifax, Experian, and TransUnion, and requested that the entries on their credit reports for FNF be removed and their credit score be raised. See Am. Compl. ¶ 47; [D.E. 30-20]. FNF's reports to the credit agencies, which state that the Glenns defaulted on their mortgage, have adversely affected the Glenns' credit scores. See Am. Compl. ¶¶ 44–45. On March 27, 2012, the Glenns, through counsel, informed FNF that Lend America never paid off the Bank of America mortgage and requested further information from FNF. See [D.E. 30-17]. On May 3, 2012, the Glenns, through counsel, wrote to Ginnie Mae, advising Ginnie Mae of their position that the Lend America transaction was fraudulent. See [D.E. 30-18]. To date, FNF has not modified its reporting about the Glenns to the credit agencies. See Am. Compl. ¶ 48.

The Glenns allege five claims against FNF, some under North Carolina law and some under federal law. As for the state law claims, the Glenns allege violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDPTA"), N.C. Gen. Stat. §§ 75-1.1 et seq., libel, and libel per se. See Am. Compl. ¶¶ 67–71, 84–88. As for the federal law claims, the Glenns allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. See Am. Compl. ¶¶ 72–83. The Glenns seek

3

damages and a declaratory judgment. See Am. Compl. 16–18.

II.

In analyzing a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint is legally and factually sufficient to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. At the motion to dismiss stage, the court may consider extrinsic documents that were explicitly discussed in the complaint. See, e.g., Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

As for the Glenns' UDTPA claim, the UDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. However, to the extent the UDTPA claim is based upon allegations of FNF's "acts of reporting false information about the [Glenns] to the credit bureaus," Am. Compl. ¶ 68, the FCRA preempts the claim. See Ross v. FDIC, 625 F.3d 808, 813 (4th Cir. 2010). The FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 prescribes detailed duties for those entities who furnish information to credit reporting agencies, including obligations to not report inaccurate information and, upon notice of a dispute, to investigate the dispute and report any corrections to

4

credit reporting agencies. See 15 U.S.C. § 1681s-2(a)–(b). Thus, the FCRA preempts the Glenns' UDTPA claim based upon furnishing inaccurate information to the credit reporting agencies. See, e.g., 15 U.S.C. § 1681t(b)(1)(F); Ross, 625 F.3d at 813.

A UDTPA claim also encompasses violations of Article 2 of the UDTPA, the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50 to 75-56. The NCDCA "prohibits debt collectors from engaging in unfair debt collection practices." Ross, 625 F.3d at 817; see N.C. Gen. Stat. §§ 75-50 to 75-56. To state a claim under the NCDCA, a plaintiff must plausibly allege three threshold requirements. See, e.g., Davis Lake Cmty. Ass'n v. Feldman, 138 N.C. App. 292, 295–96, 530 S.E.2d 865, 868 (2000). First, the plaintiff must be a consumer, who "incurred a debt or alleged debt for personal, family, household, or agricultural purposes." N.C. Gen. Stat. § 75-50(1). The Glenns are consumers because they incurred a mortgage for family or household purposes. See Am. Compl. ¶¶ 2, 14–19. Second, the claim must involve a debt, which includes "any obligation owed or due or alleged to be owed or due from a consumer." N.C. Gen. Stat. § 75-50(2). The Lend America mortgage qualifies as a debt because, at a minimum, FNF and Ginnie Mae allege that the Glenns owe money. See Am. Compl. ¶ 43. Third, the defendant must be a debt collector, which includes "any person engaging, directly or indirectly, in debt collection from a consumer." N.C. Gen. Stat. § 75-50(3). As a mortgage servicer seeking to collect on a debt, FNF qualifies as a debt collector. See Am. Compl. ¶¶ 41, 43; Williams v. HomEq Servicing Corp., 184 N.C. App. 413, 421–22, 646 S.E.2d 381, 386–87 (2007). Thus, the Glenns' allegations satisfy the NCDCA's threshold requirements.

Beyond the NCDCA's threshold requirements, a plaintiff must allege the three standard elements of a UDTPA claim: "(1) an unfair act (2) in or affecting commerce (3) proximately causing injury." Davis Lake, 138 N.C. App. at 296, 530 S.E.2d at 868; see Ross, 625 F.3d at 817. An act

5

"is unfair when it offends public policy and when the [act] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Branch Banking & Trust Co., 133 N.C. App. 580, 583, 515 S.E.2d 727, 729 (1999). "In the context of debt collection, these acts include the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations, and unconscionable means." Davis Lake, 138 N.C. App. at 296, 530 S.E.2d at 868. The Glenns' allege that, since January 2010, FNF's failure to investigate the basis for their denial of liability and FNF's continuing attempts to collect the debt constitute unfair acts. See, e.g., Am. Compl. ¶¶ 42–43; see also [D.E. 40] 8. In Walker, the North Carolina Court of Appeals concluded that a bank's collection effort of one demand letter and its failure to investigate allegations of fraud within eleven days did not amount to unfair acts. See 133 N.C. App. at 584, 515 S.E.2d at 730. Walker is distinguishable, however, based on the two-year period that FNF had to investigate the Glenns' allegations and FNF's repeated collection attempts over that time. Although the Glenns' theory is novel, the Glenns plausibly allege that FNF committed unfair acts. The Glenns also plausibly allege that FNF's actions affected commerce. See N.C. Gen. Stat. § 75-1.1(a); Davis Lake, 138 N.C. App. at 296, 530 S.E.2d at 869. Finally, the Glenns plausibly allege that FNF's actions have proximately caused damage to their employment status and health, see Am. Compl. ¶¶ 49, 53, which is sufficient to state a claim. See Davis Lake, 138 N.C. App. at 296–97, 530 S.E.2d at 869; cf. Ross, 625 F.3d at 818. Thus, the Glenns have stated a claim under the NCDCA. Whether the Glenns can prove the claim is an issue for another day.

As for the Glenns' FCRA claim, consumers may "bring private suits for violations of [15 U.S.C.] § 1681s-2(b)." Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 149 (4th Cir. 2008); cf. 15 U.S.C. §§ 1681n, 1681o. Section 1681s-2(b) prescribes the duties for entities that provide information to credit reporting agencies, usually creditors or their agents, when the accuracy

6

of the reported information has been challenged. See 15 U.S.C. § 1681s-2(b). When a consumer believes that information that a credit reporting agency published is incorrect, the consumer must file a dispute with the credit reporting agency. See 15 U.S.C. § 1681i(a)(1). The credit reporting agency then notifies the creditor or creditor's agent about the dispute. See id. § 1681i(a)(2). Upon receiving notification of the dispute, section 1681s-2(b)(1) requires the entity that provided the information "to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004); see Saunders, 526 F.3d at 149; Davis v. Trans Union, LLC, 526 F. Supp. 2d 577, 585 (W.D.N.C. 2007). At the conclusion of the investigation, the result must be disclosed to the credit reporting agency and action must be taken to remedy inaccurate or incomplete information. See 15 U.S.C. § 1681s-2(b)(1)(C)–(E).

The Glenns allege that FNF, as mortgage servicer for Ginnie Mae, furnished information to the credit reporting agencies about the Lend America mortgage. See, e.g., Am. Compl. ¶ 73. The Glenns filed a dispute with the credit reporting agencies about the accuracy of the information that FNF reported, and FNF received notice of the Glenns' dispute. See id. ¶¶ 46–47, 75; see also [D.E. 30-20]. The Glenns further allege that, despite receiving notice, FNF willfully or negligently failed to conduct a reasonable investigation of the dispute and correct any inaccuracies. See Am. Compl. ¶¶ 75–76. Thus, the Glenns have plausibly alleged an FCRA claim against FNF. See Saunders, 526 F.3d at 149; Johnson, 357 F.3d at 431. Again, whether the Glenns can prove the claim is an issue for another day.

As for the Glenns' FDCPA claim, "a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or

7

omission prohibited by the FDCPA." Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011). The Glenns' Lend America mortgage qualifies as a consumer debt within the meaning of the FDCPA. See 15 U.S.C. § 1692a(5). FNF contends, however, that as a mortgage servicer, it falls outside the FDCPA's definition of debt collector. See [D.E. 33] 9–12.

The FDCPA defines a debt collector as "any business the principal purpose of which is the collection of any debts, or [one] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Creditors generally are not debt collectors under the statute. See Johnson, 867 F. Supp. 2d at 777. The statutory definition of debt collector also excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent that such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added). Thus, a mortgage servicer may qualify as a debt collector under the FDCPA when the servicer acquires a loan that already was in default. See, e.g., Boston v. Ocwen Loan Servicing, LLC, No. 3:12CV451, 2013 WL 122151, at *4 (W.D.N.C. Jan. 9, 2013) (unpublished); Webb v. Green Tree Servicing, LLC, Civil Action No. ELH-11-2105, 2012 WL 2065539, at *3 (D. Md. June 7, 2012) (unpublished); Joy v. Merscorp, Inc., No. 5:10-CV-218-FL, 2012 WL 7804203, at *14–15 (E.D.N.C. May 15, 2012) (unpublished), report and recommendation adopted in relevant part, 2013 WL 1246856, at *7 (E.D.N.C. Mar. 27, 2013).

Here, FNF began servicing the Glenns' Lend America mortgage effective December 17, 2009. [D.E. 30-16] 1. According to the Lend America note, payments were due on the first day of each month, beginning on November 1, 2009. [D.E. 30-5] 1. Penalties for late payment were assessed "by the end of fifteen calendar days after the payment is due." Id. 2. Default occurred when the Glenns "fail[ed] to pay in full any monthly amount." Id. The Glenns only made their first

monthly payment, which was due on November 1, 2009. Am. Compl. ¶ 28. The Glenns did not make the payment due on December 1, 2009. Id. ¶ 32. FNF's January 19, 2012 letter to the Glenns attributes their loan's default status to "failing to make the monthly payments due 12-01-09 through 01-19-12." [D.E. 30-19] 1. Thus, the Glenns plausibly allege that the mortgage was in default as of December 1, 2009, when the second payment was due and unpaid, or as of December 16, 2009, when the fifteen-day late payment grace period ended. Either way, default occurred before FNF began servicing the mortgage. Accordingly, the Glenns have plausibly alleged that FNF is a debt collector within the meaning of the FDCPA.

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition encompasses "a debt collector's reporting of a consumer's debt to a credit reporting agency . . . if the communication is false, deceptive, or misleading." Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 503 (D. Md. 2004); see Davis, 526 F. Supp. 2d at 586–87. The Glenns have plausibly alleged that FNF's communications with the credit reporting agencies regarding the Lend America mortgage were false, deceptive, or misleading. See Am. Compl. ¶¶ 47–48, 79–81. Thus, the Glenns have plausibly alleged an FDCPA claim against FNF. Again, whether the Glenns can prove the claim is an issue for another day.

As for the Glenns' claim for declaratory judgment, the decision whether to grant a declaratory judgment is committed to the sound discretion of the court. See Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256–58 (4th Cir. 1996). On the current record, the court declines to dismiss the claim.

As for the Glenns' state-law claim against FNF for libel and libel per se, the Glenns concede that the FCRA preempts this claim. See [D.E. 40] 5. Thus, the court dismisses the state-law claim for libel and libel per se.

9

Case 5:12-cv-00703-D   Document 47   Filed 08/13/13   Page 9 of 10

Finally, the court addresses the Glenns' motion under Rule 41(a)(2) for voluntary dismissal with prejudice of their claims against defendants Worldwide Abstract Services Agency, LLC, United Lender Services Corp., United Lender Services, LLC, and EAM Land Services, Inc. See [D.E. 44]. In reviewing a plaintiff's motion for voluntary dismissal, the court "must focus primarily on protecting the interests of the defendant." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987); see Bioxy, Inc. v. Birko Corp., 935 F. Supp. 737, 740 (E.D.N.C. 1996). The court concludes that granting the Glenns' motion is in the interest of Worldwide Abstract Services Agency, LLC, United Lender Services Corp., United Lender Services, LLC, and EAM Land Services, Inc. Thus, the court grants the motion for voluntary dismissal. Moreover, because the voluntary dismissal moots United Lender's motion for summary judgment, the court dismisses it.

### III.

In sum, FNF's motion to dismiss under Rule 12(b)(6) [D.E. 32] is GRANTED IN PART and DENIED IN PART. The Glenns' UDTPA claim against FNF is dismissed as preempted to the extent it is based upon furnishing inaccurate information to the credit reporting agencies. The Glenns' state-law claim against FNF for libel and libel per se is dismissed. Also, the Glenns' motion for voluntary dismissal with prejudice of certain defendants [D.E. 44] is GRANTED. The court dismisses defendants Worldwide Abstract Services Agency, LLC, United Lender Services Corp., United Lender Services, LLC, and EAM Land Services, Inc. from this action. United Lender Services Corp. and United Lender Services, LLC's motion for summary judgment [D.E. 41] is DISMISSED AS MOOT.

SO ORDERED. This 13 day of August 2013.

JAMES C. DEVER III
Chief United States District Judge